IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN ANTONIO CRUZ,** | : | CIVIL ACTION NO. 1:21-CV-655 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **MR. W.T. AUKER**, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, John Antonio Cruz, alleges that defendants violated his civil rights by not providing him religious meals during Passover in 2020. The parties have filed cross motions for summary judgment. Cruz's motion will be denied, and defendants' motion will be granted in part and denied in part.

**I.   Procedural History**

Cruz filed his complaint on March 13, 2021, and the court received and docketed it on April 9, 2021. (Doc. 1). On November 8, 2022, the court granted Cruz's motion for leave to amend except to the extent that it sought to add a claim for violation of the Eighth Amendment and to add claims against Robert Marsh and deemed plaintiff's amended complaint (Doc. 40) the operative complaint in the case. (Doc. 44). The case accordingly proceeded as to: (1) a First Amendment freedom of religion claim; (2) a First Amendment retaliation claim; and (3) a Fourteenth Amendment equal protection claim. (See Doc. 40). Defendants answered the amended complaint on February 23, 2023. (Doc. 52).

Defendants moved for summary judgment on May 31, 2023.  (Doc. 82).  Cruz moved for summary judgment on October 3, 2023.  (Doc. 97).  The court subsequently granted Cruz's motion to compel discovery, reopened discovery, and denied defendants' motion for summary judgment without prejudice to file a renewed motion for summary judgment after the close of discovery.  (Doc. 104).  On March 1, 2024, the court denied Cruz's motion to supplement his complaint to include a claim for permanent injunctive relief requiring the Pennsylvania Department of Corrections to provide appropriate religious meals for Jewish inmates observing Passover and other religious ceremonies in the future.  (Doc. 115).  The court found that this proposed supplemental claim related "only indirectly" to the claims at issue in the case and that allowing the claim to proceed would likely require months of additional discovery.  (Id. at 4).  Defendants filed a renewed motion for summary judgment on March 29, 2024.  (Doc. 120). Cruz moved to strike one of defendants' summary judgment exhibits on June 4, 2024.  (Doc. 127).  The motions for summary judgment and motion to strike are ripe for review.

## II. Material Facts[1]

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 99, 121-22, 124).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

A.   **Facts Regarding Liability**

Cruz is a member of the Jewish faith. (Doc. 121 ¶ 2; Doc. 124 ¶ 2). On April 6, 2020, he filed a grievance complaining that Jewish inmates who had signed up for a Kosher diet were receiving less food than they were supposed to. (Doc. 98-1 at 2). Passover began on April 8, 2020. (Doc. 99 ¶ 10; Doc. 122 ¶ 10). Cruz had previously signed up to receive religious meals for Passover. (Doc. 99 ¶ 3; Doc. 122 ¶ 3). Cruz did not receive any of the required Passover meals from April 8, 2020 through April 14, 2020. (Doc. 121 ¶ 5; Doc. 124 ¶ 5). Defendant Auker admits that he was one of the officials responsible for distributing Passover meals during the relevant period. (Doc. 126-6 at 3). Cruz has produced evidence showing that Marzzacco was also personally involved in distributing Passover meals. (See Doc. 126-8 ¶ 18).

The parties' accounts differ on when defendants learned that Cruz was not receiving Passover meals, why this error occurred, and what defendants did to fix the error. Defendants assert that Cruz's name was "unconsciously and inadvertently" omitted from the list of inmates who were to receive Passover meals and that as soon as defendant Auker learned he was not receiving his Passover meals he arranged to have them provided to him beginning on April 14, 2020. (Doc. 121 ¶¶ 4-6). Defendants cite grievance responses from prison officials and Auker's responses to Cruz's requests for admissions to support these assertions. (See Docs. 121-4, 121-5). Defendants assert that this inadvertent omission occurred because Passover was occurring at the beginning of the COVID-19 pandemic, which was causing significant stress on the prison's food service staff. (Doc. 121 ¶¶ 7-8).

3

Cruz disputes defendants' factual contentions. According to Cruz, defendants were aware that he was supposed to receive Passover meals prior to the beginning of Passover but withheld the meals from him intentionally. (Doc. 124 ¶ 4). In support of this assertion, Cruz cites an April 2, 2020 email from Matthew McCoy to defendant Auker providing a list of inmates who were to receive Passover meals. (Doc. 124-4). Cruz also notes that he personally notified Auker that he was not receiving Passover meals via an inmate's request to staff on April 10, 2024. (Doc. 124 ¶ 4; Doc. 124-5).

**B.   Exhaustion of Administrative Remedies**

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (See Doc. 121-6).[2] Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen working days from the date of the incident. Id. § 1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. Id. § 2(A)(1)(a). Finally, the inmate must submit an appeal to the

---

[2] Doc. 121-6 is a copy of DC-ADM 804, which is attached as Exhibit 6 to defendants' motion for summary judgment.

4

Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. Id. § 2(B)(1)(b).

Cruz has filed one grievance about the events at issue in this case, grievance number 864382. (Doc. 121 ¶ 15; Doc. 124 ¶ 15).[3] The grievance does not assert a retaliation claim. (Doc. 121 ¶ 17; Doc. 124 ¶ 17).[4] The grievance does not name defendant Marzzacco by her name or title, (Doc. 121 ¶ 16), but Cruz asserts that the grievance's reference to "dietary" should be construed as a reference to all dietary staff members who were involved in the purported denial of Passover meals, a class of people that included Marzzacco. (See Doc. 124 ¶ 16).

---

[3] Defendants assert that "Plaintiff filed one grievance, number 864382, about the events at issue in the above-captioned litigation." (Doc. 121 ¶ 15). Cruz argues that this is not true because he filed another grievance on April 6, 2020 asserting that Jewish inmates were not being given full meal portions and this grievance is the basis of his retaliation claim. (Doc. 124 ¶ 15). The court agrees that Cruz's amended complaint asserts a retaliation claim based on his filing of the April 6, 2020, grievance, but we construe defendants' statement to assert that Cruz only filed one grievance to exhaust administrative remedies on the claims he raises in this case. Because the substance of Cruz's retaliation claim is that defendants denied him Passover meals in retaliation for the filing of his April 6, 2020, grievance, his filing of the April 6, 2020, grievance does not—and cannot—exhaust administrative remedies for his retaliation claim since the alleged retaliation occurred after the grievance was filed. We accordingly deem defendants' assertion that Cruz only filed one grievance about the events at issue in this case undisputed.

[4] Cruz objects that this assertion is "irrelevant" because "the defendants are attempting to argue a pleadings argument during summary judgment." (Doc. 124 ¶ 17). Cruz continues: "This court liberally construed the Plaintiff's complaint to also claim a First Amendment Retaliation claim and gave direction to the defendants to address it during the pleading stages of litigation. See Doc. 44. The defendants failed to address this claim during the pleading stages of litigation and therefore have waived their opportunity to do so." (Doc. 124 ¶ 17 (citing FED. R. CIV. P. 12(h) and 15(a)(3).) Because this response does not address the substance of defendants' contention that the grievance fails to advance a retaliation claim, we will treat the contention as undisputed. We address Cruz's argument that defendants have waived their exhaustion argument in the discussion section below.

5

### III. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts may resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. FedEx, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## IV. **Discussion**

Cruz brings his federal constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Cruz's motion for summary judgment asserts that he is entitled to judgment as a matter of law on his remaining claims. (Doc. 98). Defendants advance three arguments to the contrary as to why they should instead be granted summary judgment: (1) that Cruz failed to exhaust administrative remedies as to his claims against Marzzacco and his retaliation claim; (2) that defendants are entitled to qualified immunity as to Cruz's free exercise and equal protection claims; and (3) that Cruz may not recover declaratory relief, compensatory damages, or punitive damages.[5] (Doc. 123).

---

[5] Defendants' brief separates the declaratory relief, compensatory damages, and punitive damages arguments into three separate arguments, but the court has combined them here for the sake of brevity. We have additionally reordered defendants' arguments to align with the order in which we analyze them.

7

### A. Exhaustion

We first consider defendants' argument that Cruz failed to exhaust administrative remedies with respect to his retaliation claim and his claims against defendant Marzzacco. Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)). If defendants establish failure to exhaust

8

administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. Id. at 268.

At the outset, we consider Cruz's argument that defendants waived their ability to assert failure to exhaust administrative remedies by not asserting the argument at the pleading stage of litigation. (Doc. 124 ¶ 17). This argument is meritless. There is no strict timing requirement for defendants to assert the affirmative defense of failure to exhaust administrative remedies. Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).[6]

Turning to the merits of the exhaustion argument, record evidence establishes that Cruz failed to exhaust administrative remedies with respect to his retaliation claim. The only grievance Cruz filed to exhaust administrative remedies on his claims, grievance number 864382, does not assert a retaliation claim or assert

---

[6] To the extent Cruz's citations of Federal Rules of Civil Procedure 12(h) and 15(a)(3) are meant as arguments that defendants waived their exhaustion argument under these rules, (see Doc. 124 ¶ 17), these arguments are also meritless. Rule 12(h) states that the affirmative defenses of lack of personal jurisdiction, improper venue, insufficient process, or insufficient service of process may be waived if a defendant fails to assert them in an answer or motion to dismiss. FED. R. CIV. P. 12(h). The rule does not set a strict timing requirement for the assertion of failure to exhaust administrative remedies. Rule 15(a)(3) states that "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading." FED. R. CIV. P. 15(a)(3). We liberally construe Cruz's citation to Rule 15(a)(3) as an argument that defendants waived failure to exhaust administrative remedies because their answer to his amended complaint was untimely. Rule 15(a)(3), however, specifically contemplates that the court may impose timing requirements for parties to answer amended complaints that differ from the rule's requirements, and this court has previously deemed defendants' answer to the amended complaint "properly and timely filed." (Doc. 61 at 2). Neither Rule 12(h) nor Rule 15(a)(3) compels the conclusion that defendants waived the affirmative defense of failure to exhaust.

any facts from which a retaliation claim could be inferred. (See Doc. 121 at 6). The gravamen of Cruz's retaliation claim is that defendants denied Cruz Passover meals in retaliation for his April 6, 2020, grievance complaining about the portions of food given to Jewish inmates, but grievance number 864382 does not mention the April 6, 2020, grievance or assert in any way that the denial of Passover meals was motivated by Cruz filing earlier grievances. (See id.) Hence, we will grant defendants summary judgment on the retaliation claim for failure to exhaust administrative remedies.

Defendants additionally argue that Marzzacco is entitled to summary judgment for failure to exhaust administrative remedies because Cruz failed to name her in his grievance by name or title. (Doc. 123 at 14-15).

We disagree. The PLRA does not impose a "name all defendants" rule for exhaustion of administrative remedies. Jones, 549 U.S. at 217. The purpose of a grievance "is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) (quoting Jones, 549 U.S. at 219). Thus, an inmate's failure to name a defendant in his original grievance may be excused if the unnamed defendant is "fairly within the compass of the prisoner's grievance." Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004).

Cruz's grievance states that "Dietary" was responsible for denying him Passover meals, (Doc. 121-2 at 6), and Cruz asserts that this is a common term used by inmates and staff in the DOC to refer to all dietary officials responsible for serving meals when the exact identity of the individuals in question is not known.

(Doc. 126 at 18). The responses to Cruz's initial grievance appear to corroborate his assertion that "dietary" is commonly used to refer to all staff members working in food service. (See, e.g., Doc. 121-2 at 7 (repeatedly using "Dietary" as a plural noun referring to staff members); id. at 11 (same).) We find that this evidence creates a genuine issue of material fact as to whether Cruz's reference to "Dietary" was sufficient to name Marzzacco in his original grievance.

## B. Free Exercise and Equal Protection Claims

Cruz argues he is entitled to summary judgment on his free exercise and equal protection claims and defendants argue they are entitled to qualified immunity on these claims. We address these arguments concurrently.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).

11

Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles, 571 F.3d at 325-26. A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated, and (2) whether that right was "clearly established." Pearson, 556 U.S. at 232. These prongs may be considered in either order. Id. at 236. Qualified immunity is an affirmative defense that must be pleaded and proven by the defendant asserting it. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014).

Defendants argue that they are entitled to qualified immunity because they reasonably believed that their actions did not violate Cruz's constitutional rights. Defendants concede that Cruz has the right to religious meals in accordance with his faith, but they assert they were unaware they were violating this right because the list of inmates slated to receive Passover meals inadvertently omitted Cruz. (Doc. 123 at 7-8). Given the purported omission of Cruz's name from the list as well as the stress caused by the COVID-19 pandemic, defendants assert that a reasonable person in their shoes would have similarly declined to give Cruz religious meals. (Id. at 8). Defendants assert that as soon as Auker became aware of Cruz not being given Passover meals, he rectified the mistake. (Id. at 8-9).

We find that genuine issues of material fact preclude summary judgment as to both defendants' assertion of qualified immunity and plaintiff's merits argument. The parties have provided conflicting accounts—both of which are supported by record evidence—as to when defendants learned that Cruz was being denied

religious meals, why he had been denied these meals, and what steps defendants took to rectify the situation when they learned of it. Defendants assert that the omission of Cruz's name from the list of inmates to receive Passover meals was an inadvertent mistake caused largely by the stress of the COVID-19 pandemic and that immediately upon learning of this mistake they corrected it and began providing Passover meals to Cruz. (See Doc. 121 ¶¶ 4-8; Doc. 121-4; Doc. 121-5). Cruz asserts that defendants were subjectively aware that he was supposed to receive Passover meals throughout Passover but intentionally deprived him of those meals. (See Doc. 124 ¶ 4; Doc. 124-4; Doc. 124-5). Determining which of these accounts of the relevant facts is true is the province of the finder of fact. The court cannot weigh the parties' conflicting evidence at this stage of litigation. We will deny both parties' motions with respect to Cruz's free exercise and equal protection claims.

### C. Declaratory Judgment

Declaratory relief is prospective in nature and may not be awarded based on past harms. CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 628 (3d Cir. 2013); Wenzig v. SEIU Local 668, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019). Defendants argue that Cruz may not recover declaratory judgment in this case because he alleges only past harms of his civil rights. (Doc. 123 at 10-11). Cruz argues that declaratory relief is appropriate because:

> Passover 2024 was scheduled to begin April 22, 2024 through April 30, 2024, and there are men here who were not given their unleavened bread, the Plaintiff was shortened his amount because more people signed up to observe this year. He was not provided with the complete list of Seder food items Passover 2020, Passover 2023, or Passover 2024.

> The Jews are experiencing antisemitic hatred concerning Passover and this can only be settled via declarative judgment.

(Doc. 126 at 15).

We agree with defendants that Cruz cannot recover declaratory relief. Cruz's only allegation of harm—that he was denied religious meals during Passover in 2020—is a past harm for which the court may not grant declaratory relief. CMR D.N. Corp., 703 F.3d at 628. Cruz's allegation that Jewish inmates continue to be denied adequate religious meals for Passover is immaterial. The court previously denied Cruz's motion to supplement his complaint to include claims requiring defendants to prospectively provide Jewish inmates with adequate religious meals, finding that these claims "relate only indirectly" to his currently operative complaint seeking damages for the denial of religious meals during Passover in 2020. (Doc. 115 at 4). Because the only claims in this case seek relief for past harms, we will grant defendants' motion for summary judgment to the extent it seeks to bar Cruz from obtaining declaratory judgment.

### D.     Damages

Defendants seek to bar Cruz from recovering compensatory or punitive damages. The PLRA prohibits inmates from bringing claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). A prisoner plaintiff's claims for compensatory damages based on "mental and/or emotional injury" caused by a violation of the plaintiff's constitutional rights are barred by the

14

PLRA unless the plaintiff can establish that he suffered a related physical injury. Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000).

Defendants argue Cruz may not recover compensatory damages because he does not allege any physical injuries and instead seeks relief "for his injury of not being able to observe his religious faith." (Doc. 123 at 10). Defendants cite to a portion of Cruz's deposition to support this argument, (see Doc. 121 ¶ 13), wherein defendants' counsel asked Cruz to "briefly describe" his injuries and he responded, "Well, you can imagine a person who is trying to, you know, observe their faith and having to go through all these obstacles to do it, you know, that's - - that was the injury." (Doc. 121-1 at 6).[7] Cruz disagrees with defendants' argument, asserting that he suffered a physical injury in the form of hunger. (Doc. 124 ¶ 13).

We find that genuine issues of material fact preclude summary judgment on the issue of compensatory damages. Cruz's amended complaint alleges that during the period he was denied Passover meals he suffered the following physical injuries:

> After three days the body began to go through withdrawal, he could not sleep, but he did not have enough energy to do anything. He had to drink hot water to try to mask the hunger pains. His knees started hurting the fourth day, and it did not matter how much he had the housing unit officers contact dietary. Another day, no breakfast, no lunch, no dinner, it is psychological. Every meal there was a false hope, only to find out that it would not be for that day. Five days, six days, flush, dizzy, starving.

(Doc. 40 at 12). It is undisputed that Cruz was provided alternative meals during the relevant period, but his amended complaint alleges that eating these meals

---

[7] The court cites the deposition transcript using the page numbers from the court's electronic docket.

15

during Passover would violate his Jewish faith because the meals were contaminated with Chometz.[8] (Doc. 40 ¶¶ 14-17). Defendants rely on Cruz's deposition testimony in which he only referred to his psychological injuries to establish the fact that he did not suffer any physical injuries, but it appears from the deposition transcript provided to the court that counsel never asked whether he suffered any physical injuries in addition to his psychological injuries. (Doc. 121-1 at 6). We do not construe Cruz's testimony regarding his psychological injuries as an admission that he suffered no physical injuries. Because there are genuine issues of material fact as to whether Cruz suffered physical injuries, we will deny defendants' motion for summary judgment on the issue of compensatory damages.

Defendants additionally seek to bar Cruz from recovering punitive damages. (Doc. 123 at 11-12). Punitive damages, however, may be awarded "based solely on a constitutional violation, provided the proper showing is made," Allah, 226 F.3d 251, that is, "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). We will deny defendants' request to bar Cruz from recovering punitive damages. We cannot say as a matter of law that defendants' actions were not recklessly or callously indifferent to Cruz's constitutional rights.

---

[8] For purposes of this summary judgment analysis only, the court takes judicial notice that "chometz," often alternatively spelled as "chametz" or "other spellings transliterated from Hebrew," refers to "foods with leavening agents that are forbidden to Jews on the holiday of Passover." *Chametz*, WIKIPEDIA, https://en.wikipedia.org/wiki/Chametz, (last visited July 30, 2024).

### E. John Doe Defendants

Having resolved the parties' summary judgment arguments, the court will *sua sponte* dismiss Cruz's claims against any John or Jane Doe defendants. Claims against John or Jane Doe defendants are properly dismissed when the defendants have not been identified prior to the discovery deadline. See, e.g., Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (nonprecedential);[9] Ornstein v. Warden, 3:18-CV-2042, 2021 WL 4290180, at *3 n.35 (M.D. Pa. Sept. 21, 2021); King v. Mansfield Univ. of Pa., No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014).

### F. Motion to Strike

Finally, we will deny Cruz's motion to strike. The motion seeks to strike from the docket the list of inmates that defendants have produced that showed which inmates were to receive meals for Passover in 2020. (Doc. 127). Cruz argues the list is properly stricken from the record because it cannot be verified as authentic under Federal Rules of Evidence 901 or 902. (Id.) The court finds that the motion to strike presents an evidentiary issue that would be properly resolved at the time of trial, or, if appropriate, through a motion in limine filed before trial. We will deny the motion to strike without prejudice to Cruz's right to challenge the admissibility of the list at a later stage of litigation.

---

[9] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

## IV. Conclusion

We will grant defendants' motion for summary judgment in part and deny it in part. The case will proceed solely as to Cruz's free exercise and equal protection claims for damages against defendants Auker and Marzzacco. The parties will be directed to file a joint status report indicating whether they wish to have this case referred to mediation. If the case is not resolved through mediation, the court will schedule an evidentiary hearing to determine whether defendants can establish the affirmative defense of failure to exhaust administrative remedies.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   July 30, 2024